## UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| CHURCH & DWIGHT CO., INC. and<br>WATER PIK, INC.,<br><br>         *Plaintiffs*,<br><br>   v.<br><br>UNITED STATES OF AMERICA;<br>OFFICE OF THE UNITED STATES TRADE<br>REPRESENTATIVE; ROBERT E. LIGHTHIZER, U.S.<br>TRADE REPRESENTATIVE; U.S. CUSTOMS &<br>BORDER PROTECTION; MARK A. MORGAN, IN<br>HIS OFFICIAL CAPACITY AS SENIOR OFFICIAL<br>PERFORMING THE DUTIES OF THE<br>COMMISSIONER OF THE U.S. CUSTOMS &<br>BORDER PROTECTION,<br>         *Defendants.* | Court No. 20-03833 |

## <u>COMPLAINT</u>

Plaintiffs, CHURCH & DWIGHT CO., INC. and WATER PIK, INC., by and through their attorneys, allege and state as follows:

1.     This Complaint concerns Defendants' unlawful escalation and extension of the Section 301 tariffs on imports from China included on the Office of the U.S. Trade Representative ("USTR")'s so-called "List 3" and "List 4." *Notice of Modification of Section 301 Action: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation*, 83 Fed. Reg. 47,974 (Sept. 21, 2018); *Notice of Modification of Section 301 Action: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation*, 84 Fed. Reg. 43,304 (Aug. 20, 2019).

2.     The Trade Act of 1974 ("Trade Act") does not provide Defendants with the authority to engage in a trade war with China free of all statutory confines placed on them by Congress. The USTR conducted an investigation into China's intellectual property "acts,

policies, and practices" pursuant to Section 301 of the Trade Act (19 U.S.C. § 2411). Section 304 of the Trade Act (19 U.S.C. § 2414) required the USTR to determine what, if any, action to take within 12 months of initiation of that investigation. However, the USTR failed to issue List 3 or subsequent List 4 within that statutorily mandated timeframe. Although Section 307 (19 U.S.C. § 2417) authorizes the USTR to "modify or terminate" an action taken pursuant to Section 301 in certain circumstances (when the burden imposed on US commerce from the foreign country's investigated unfair acts, policies, or practices increases or decreases), it does *not* authorize tariffs to be increased or the imposition of tariffs be expanded to other imports from China for reasons *unrelated* to the unfair intellectual property policies and practices that the USTR had investigated pursuant to Section 301. Yet that is exactly what Defendants did here.

3.      Unlike List 1 and 2—which for sake of argument were proportionate and responsive to the alleged forced technology transfer and intellectual property theft by the Chinese identified in the USTR's 301 investigation—both the USTR and the government made it clear that List 3 and/or List 4 were intended to address China's threatened retaliatory measures, not the harms identified in the USTR's Section 301 investigation. Section 307 also allows the USTR to "modify or terminate" an action taken pursuant to Section 301 when the USTR deems the action taken to be "no longer appropriate," as it did here. But in such circumstances, the Trade Act only authorizes the USTR to *delay, taper, or terminate* such actions—it does not authorize the USTR to either increase or expand the imposition of actions taken to *additional* imports from China.

4.      The arbitrary manner in which Defendants implemented the List 3 and/or List 4 tariffs also violates the Administrative Procedure Act ("APA"). In announcing and implementing the tariffs on List 3 and/or List 4, the USTR (1) failed to provide sufficient opportunity for

comment, *e.g.*, requiring interested parties to submit *both* affirmative *and* rebuttal comments *on the same day*; (2) failed to consider relevant factors, including the supposed "increased burden" imposed on U.S. commerce from the unfair policies and practices that it originally investigated, when making its decision; and (3) failed to connect the record facts to the choices it made, as required under the APA. Despite receiving over 6,000 public comments, the USTR failed to provide any indication of how those comments shaped its final promulgation of List 3. The USTR similarly failed to specifically acknowledge or respond to the nearly 3,000 public comments submitted during the notice and comment process for List 4.

5.      The Court should set aside Defendants' actions as *ultra vires* and otherwise contrary to law, as well as order Defendants to refund (with interest) any duties paid by Plaintiffs pursuant to List 3 and/or List 4.

## **JURISDICTION**

6.      The Court possesses subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1581(i)(1)(B) and (D). Section 1581(i)(1) provides, in relevant part, that "the Court of International Trade shall have exclusive jurisdiction of any civil action commenced against the United States, its agencies, or its officers, that arises out of any law of the United States providing for—

(B) tariffs, duties, fees, or other taxes on the importation of merchandise for reasons other than the raising of revenue;

(D) administration and enforcement with respect to the matters referred to in subparagraphs (A) through (C) of this paragraph and subsections (a)-(h) of this section."

U.S.C. § 1581(i)(1)(B) and (D).

Plaintiffs' suit arises out of Section 301 of the Trade Act, which is a law providing for such "tariffs" and "duties" imposed for reasons other than raising revenue. It also involves the "administration and enforcement" of these matters.

## STANDING

7.      Plaintiffs have both constitutional and statutory standing. Plaintiffs have suffered an actual, imminent injury that is fairly traceable to the implementation, administration, and enforcement of List 3 and/or List 4 that can be redressed by a declaratory judgment and permanent injunction by the Court, and Plaintiffs fall within the zone of interests of Section 301.

8.      To invoke the jurisdiction of a federal court, a party must meet the case or controversy requirements of Article III of the Constitution. *See* U.S. Const. art. III, § 2,  cl. 1; cf. 28 U.S.C. § 251 (establishing the CIT as an Article III court). "The essence of the standing question, in its constitutional dimension, is whether the plaintiff has alleged such a personal stake in the outcome of the controversy (as) to warrants [its] invocation of federal court jurisdiction and to justify exercise of the court's remedial powers on [its] behalf. *Vill. Of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 260-261 (1977) (internal citations and quotations omitted). Specifically, a plaintiff must show: (1) "that it has suffered a concrete and particularized injury that is either actual or imminent," (2) "that the injury is fairly traceable to the defendant," and (3) "that a favorable decision will likely redress the injury." *Massachusetts v. EPA*, 549 U.S. 497, 517 (2007). The injury may be indirect so long as it is fairly traceable to defendants' conduct. *Vill. of Arlington Heights*, 429 U.S. at 261. *See also Nat. Res. Def. Council, Inc. v. Ross*, 42 CIT __, __ 331 F. Supp. 3d 1338, 1357, 1361 (2018).

9.      Tariffs imposed by Defendants pursuant to List 3 and/or List 4 adversely affected and aggrieved Plaintiffs because they were required to pay these unlawful duties. Courts

"routinely recognize probable economic injury resulting from [governmental actions] that alter competitive conditions [are] sufficient to satisfy the [Article III injury-in-fact requirement]." *Clinton v. City of New York*, 524 U.S. 417, 433 (1998).

10.     Plaintiffs are also "adversely affected" and "aggrieved" by the USTR's implementation, administration, and enforcement of List 3 and/or List 4 within the meaning of the Administrative Procedure Act ("APA"), 5. U.S.C §§ 702, 704, and 706. *See* 28 U.S.C. § 2631(i) ("Any civil action of which the Court of International Trade has jurisdiction . . . may be commenced in the court by any person adversely affected or aggrieved by agency action within the meaning of Section 702 of title 5."). Plaintiffs source products that are directly subject to the 25% *ad valorem* List 3 and List 4 tariffs. These tariffs increase the cost of doing business and reduce profits and business opportunities.

11.     Plaintiffs also have statutory standing under Section 301 to bring this suit. "[C]ourts applying the judicial review standards of the [APA], 5. U.S.C. § 702, determine whether the plaintiff has standing to seek review under that statute based on 'whether the interest sought to be protected by the complainant is arguably within the zone of interests to be protected or regulated by the statute or constitutional guarantee in question." *Gilda Industries, Inc. v. United States*, 446 F.3d 1271, 1279-80 (Fed. Cir. 2006) (internal citations omitted).

12.     The zone of interests of Section 301 includes United States commerce. 19 U.S.C. § 2411(a)(1)(B)(ii). The text of the statute itself shows that Congress wanted to ensure that the underlying Section 301 measures and the implementation of those measures reflect consideration of United States commerce, including participants in U.S. commerce. Plaintiffs are participants in U.S. commerce, placing them "arguably within the zone of interests to be protected or regulated by the statute…in question." *See Lexmark Int'l, Inc. v. Static Control Components,*

*Inc.*, 572 U.S. 118, 130 (2014) ("In [the APA] context we have often 'conspicuously included the work 'arguably' in the test to indicate that the benefit of any doubt goes to plaintiff" (citations omitted)). Plaintiffs' injuries related to the payment of duties and the impact of its sourcing abilities and supply chain, as well as the resulting impact on the prices of its product which are an integral part of United States commerce confer standing.

## PARTIES

13.     Plaintiff CHURCH & DWIGHT CO., INC., a publicly-owned corporation organized under the laws of Delaware and based in New Jersey, is a global leader in the household consumer products and personal care industries listed on the New York Stock Exchange under the ticker symbol CHD. CHURCH & DWIGHT has made numerous entries of products classified under HTSUS subheadings subject to the additional *ad valorem* duties under List 3, including but not limited to certain products of HTSUS 3402.20.1100, 3923.90.0080, 4016.93.5010, 4202.32.2000, 4819.20.0040, 8413.20.0000, 8504.40.9510, 8506.10.0000, 8510.90.1000, 8510.90.5500, 8523.52.0010, 8536.69.8000, 8537.10.9170, and 8544.42.9090; and List 4, including but not limited to certain products of HTSUS 4911.99.8000, 8212.10.0000, 8212.20.0010, 8510.10.0000, and 9603.21.0000.

14.     Plaintiff WATER PIK, INC., a wholly-owned subsidiary of CHURCH & DWIGHT organized under the laws of Delaware and based in Colorado, is a leader in the consumer oral health and shower heads industries. WATER PIK has made numerous entries of products classified under HTSUS subheadings subject to the additional *ad valorem* duties under List 3, including but not limited to certain products of HTSUS 3306.90.0000, 3917.39.0010, 4819.10.0040, 4819.20.0040, 4821.90.2000, 8310.00.0000, 8424.90.9080, 8504.31.4035, 8504.40.6001, 8504.40.9510, 8509.90.5500, and 8531.90.9001; and List 4, including but not

limited to certain products of HTSUS 3924.90.5650, 3926.90.9985, 9023.00.0000, and 9603.21.0000.

15.     Defendant United States of America received the disputed tariffs and is the statutory defendant under 5 U.S.C. § 702 and 28 U.S.C. § 1581(i)(1)(B). The actions complained of in this Complaint were undertaken by its agency, Defendant USTR.

16.     The Office of the USTR is an executive agency of the United States charged with investigating a foreign country's trade practices under Section 301 of the Trade Act and implementing "appropriate" responses, subject to the direction of the Executive Office of the President. The USTR conducted the Section 301 investigation at issue and made numerous decisions regarding List 3 and/or List 4. It is headquartered at 600 17th Street, Washington, D.C. 20508.

17.     Ambassador Robert Lighthizer currently holds the position of the United States Trade Representative and serves as the director of the Office of the USTR. In these capacities, he made numerous decisions regarding List 3 and/or List 4.

18.     Defendant U.S. Customs & Border Protection ("CBP") , an executive agency of the U.S. Government, is the agency that collects duties on imports. CBP collected payments made by Plaintiffs to account for the tariffs imposed by the USTR under List 3 and/or List 4. It is headquartered at 1300 Pennsylvania Avenue NW, Washington, DC 20229.

19.     Defendant Mark A. Morgan is the Acting Commissioner of CBP. In this capacity, he oversees CBP's collection of duties paid by Plaintiffs under List 3 and/or List 4.

## TIMELINESS OF THE ACTION

20.     A plaintiff must commence an action under 28 U.S.C. § 1581(i)(1)(B) "within two years after the cause of action first accrues." 28 U.S.C. § 2636(i).

21.     The instant action is filed within two years of the dates of payments of List 3 and/or List 4 duties upon entry. This action is therefore timely filed.

## STATUTORY OVERVIEW

22.     Section 301 of the Trade Act authorizes the USTR to investigate a foreign country's trade practices. 19 U.S.C. § 2411(b). If the investigation reveals an "unreasonable or discriminatory" practice, the USTR may take "appropriate" action, such as imposing tariffs on imports from the country that administered the unfair practice. *Id.* § 2411(b), (c)(1)(B).

23.     Section 304 of the Trade Act requires the USTR to determine what action to take, if any, within 12 months after the initiation of the underlying investigation. *Id.* § 2414(a)(1)(B), (2)(B).

24.     Section 307 of the Trade Act (in pertinent part) allows the USTR to "modify or terminate" an action taken pursuant to Section 301 of the Trade Act either when the "burden or restriction on United States commerce" imposed by the investigated foreign country's practice has "increased or decreased" or when the action "is no longer appropriate." *Id.* § 2417(a)(1)(B), (C).

25.     The APA provides broad judicial review of agency actions brought by "person[s] suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute." 5 U.S.C. § 702.

26.     The APA states that courts will "hold unlawful and set aside" agency action that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law." 5 U.S.C § 706(2)(a).

## PROCEDURAL HISTORY

I.    **USTR's Investigation**

27.    On August 14, 2017, the instant dispute between the United States and China began when President Trump, through a Presidential Memorandum, directed Ambassador Lighthizer to initiate an investigation pursuant to Section 301(b) of the Trade Act concerning China's laws, policies, practices, and actions related to intellectual property, innovation, and technology. *Addressing China's Laws, Policies, Practices, and Actions Related to Intellectual Property, Innovation, and Technology*, 82 Fed. Reg. 39,007 (Aug. 17, 2017). In requesting the commencement of this investigation, President Trump alleged that certain Chinese "laws, policies, practices, and…actions" relating to intellectual property, innovation, and technology "may inhibit United States exports, deprive United States citizens of fair remuneration for their innovations, divert American jobs to workers in China, contribute to our trade deficit with China, and otherwise undermine American manufacturing, services, and innovation." *Id.*

28.    On August 18, 2017, the USTR formally initiated an investigation, pursuant to Section 301(b) of the Trade Act, into "whether acts, policies, and practices of the Government of China related to technology transfer, intellectual property, and innovation are actionable[.]" *Initiation of Section 301 Investigation; Hearing; and Request for Public Comments: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation*, 82 Fed. Reg. 40,213 (Aug. 24, 2017).

29.    On March 22, 2018, the USTR published a report detailing the results of its investigation. OFFICE OF THE UNITED STATES TRADE REPRESENTATIVE, *Findings of the Investigation Into China's Acts, Policies, And Practices Related to Technology Transfer, Intellectual Property, and Innovation Under Section 301 of The Trade Act of 1974* (Mar. 22,

2018), *available at* https://ustr.gov/sites/default/files/Section%20301%20FINAL.PDF. The USTR found that the Chinese government's "acts, policies, and practices" were "unreasonable or discriminatory" and that they "burden[ed] or restrict[ed] U.S. commerce." *Id.* at 17. The USTR based its findings on the following factors: (1) China's strict foreign ownership limitations, foreign investment restrictions, and burdensome administrative licensing and approval processes used to pressure technology transfers from U.S. to Chinese entities, *id.* at 45; (2) China's non-market-based licensing processes for the transfer of technology from U.S. entities to Chinese entities, *id.* at 48; (3) China's facilitation of strategic Chinese investment in U.S. companies and assets, especially in the technology sector and in other industries deemed critical by national industrial plans, *id.* at 147; and (4) China's cyber intrusions  into U.S. computer networks containing "trade secrets, technical data . . . and sensitive and proprietary internal communications," *id.* at 171.

30.     The USTR's report failed to present a substantive quantitative analysis demonstrating the actual "burdens" or "restrictions" imposed by the alleged "acts, policies, and practices" on U.S. commerce. However, concurrent with its report, the USTR also posted a "Fact Sheet" stating that "[a]n interagency team of subject matter experts and economists estimates that China's policies result in harm to the U.S. economy of at least $50 billion per year." OFFICE OF THE UNITED STATES TRADE REPRESENTATIVE, *Section 301 Fact Sheet* (Mar. 22, 2018), *available at* https://ustr.gov/about-us/policy-offices/press-office/fact-sheets/2018/march/Section-301-fact-sheet. Based on these findings, the USTR proposed additional tariffs of 25% *ad valorem* "on certain products of China, with an annual trade value commensurate with the harm caused to the U.S. economy resulting from China's unfair policies." *Id.*; *see Actions by the United States Related to the Section 301 Investigation of China's Laws, Policies, Practices, or*

*Actions Related to Technology Transfer, Intellectual Property, and Innovation*, 83 Fed. Reg. 13,099 (Mar. 27, 2018) (President's directive).

## II.   Lists 1 & 2

31.    Defendants subsequently undertook a series of actions between April and August 2018, as enumerated below, in order to remedy the estimated harm to the U.S. economy caused by the aforementioned Chinese "acts, policies, and practices." Within the 12-month statutory deadline from the initiation of the investigation, Defendants ultimately imposed duties on imports from China covered by so-called Lists 1 and 2, *see* 19 U.S.C. § 2414(a)(2)(B).

32.    On April 6, 2018, the USTR published its initial notice of its intent to impose "an additional duty of 25 percent on a list of products of Chinese origin." *Notice of Determination and Request for Public Comment Concerning Proposed Determination of Action Pursuant to Section 301: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation*, 83 Fed. Reg. 14,906, 14,907 (Apr. 6, 2018). This proposed list of products, known as "List 1," covered 1,333 tariff lines with a total value of "approximately $50 billion in terms of estimated annual trade value for calendar year 2018." *Id.* at 14,907. In a press release accompanying the notice, the USTR explained that the products included on its proposed List 1 were selected in accordance with the harm to the U.S. economy, which the USTR valued at $50 billion per year in its report. Specifically, the USTR noted that the amount covered by List 1 was "commensurate with an economic analysis of the harm caused by China's unreasonable technology transfer policies to the U.S. economy, as covered by the USTR's Section 301 investigation." OFFICE OF THE UNITED STATES TRADE REPRESENTATIVE, *Under Section 301 Action, USTR Releases Proposed Tariff List on Chinese Products* (Apr. 3, 2018), *available at*

https://ustr.gov/about-us/policy-offices/press-office/press-releases/2018/april/under-section-301-action-ustr.

33.     On June 20, 2018, the USTR published the final List 1 products to be subject to the additional 25% *ad valorem* duty. *Notice of Action and Request for Public Comment Concerning Proposed Determination of Action Pursuant to Section 301: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation*, 83 Fed. Reg. 28,710 (June 20, 2018). In this notice, the USTR emphasized its "carefu[l] revie[w of] the public comments and the testimony" received, as well as "the extent to which the . . . products [on the proposed List] contain[ed] industrially significant technology." Based on this analysis, the USTR "narrow[ed] the proposed list in the April 6, 2018 notice [from 1,333] to 818 tariff subheadings, with an approximate annual trade value of $34 billion," *i.e.* $16 billion *less* than its original proposal. *Id.* at 28,711; *see also Notice of Determination and Request for Public Comment Concerning Proposed Determination of Action Pursuant to Section 301: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation*, 83 Fed. Reg. 14,906, 14,907 (Apr. 6, 2018).

34.     Along with the publication of the final List 1 products, the USTR announced its intent to impose a 25% *ad valorem* duty on a second group of Chinese products in order to "maintain the effectiveness of [the] $50 billion trade action" stemming from its Section 301 investigation. *Id.* at 28,712. The USTR's second proposed list, known as "List 2", covered 284 tariff subheadings with "an approximate annual trade value of $16 billion." *Id.* at 28,711-12.

35.     On August 16, 2018, the USTR published the final List 2 products to be subject to an additional duty of 25% *ad valorem*. List 2 included 279 out of the proposed 284 tariff subheadings, with the "annual trade value . . . remain[ing] approximately $16 billion." *Notice of*

*Action Pursuant to Section 301: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation*, 83 Fed. Reg. 40,823, 40,823-24 (Aug. 16, 2018).

## III.   List 3 and List 4

36.    Following the publication of the results of the USTR's Section 301 investigation in March 2018 and the announcement of the List 1 and List 2 tariffs in months that followed, Defendants and the Government of China engaged in a "tit-for-tat" escalation of trade tensions. Defendants ultimately expanded the scope of the Section 301 duties to dramatically with the announcement of a third list and a fourth list of tariffs collectively valued at more than $500 billion—an astronomical figure given that the USTR had initially deemed tariffs on $50 billion worth of products to be "commensurate" with the findings of the original Section 301 investigation. This large discrepancy indicates Defendants' departure from the underlying rationale of the Section 301 investigation. The implementation of tariffs on List 3 and List 4 was not grounded in or related to the unfair practices that the USTR identified in its report. Rather, the magnitude of products included on List 3 and List 4 was the result of countermeasures enacted by the Chinese government in response to the USTR's List 1 and List 2 tariffs and a host of other policy grievances with China unrelated to the "acts, policies, and practices" at issue in the USTR's initial investigation.

### A.   List 3

37.    Following publication of the USTR's report in April 2018, and the President's directive that duties be imposed on $50 billion in Chinese products, the Chinese government issued threats of retaliation on an equivalent amount of goods imported into China from the United States. Responding to the possibility of such countermeasures, President Trump "instructed the USTR to consider whether $100 billion of additional tariffs would be appropriate

under Section 301." THE WHITE HOUSE, *Statement from Donald J. Trump on Additional Proposed Section 301 Remedies* (Apr. 5, 2018), *available at* https://www.whitehouse.gov/briefings-statements/statement-president-donald-j-trump-additional-proposed-section-301-remedies/. The stated basis for the President's recommendation that the USTR double the value of products to be subject to additional duties was "China's unfair retaliation" against "our farmers and manufacturers." *Id.*

38.     As the USTR was finalizing List 1 in June 2018, the President issued several warnings that he would consider imposing additional tariffs on Chinese goods if China retaliated against the United States' initial action. *See e.g.*, Vicki Needham & Max Greenwood, *Trump Announces Tariffs on $50 Billion in Chinese Goods*, THE HILL (June 15, 2018), *available at* http://thehill.com/homenews/ administration/392421-trump-announces-tariffs-on-50-billion-in-chinese-goods. The President specifically noted that he would pursue additional action "such as imposing new tariffs on United States goods, services or agricultural products; raising non-tariff barriers; or taking punitive actions against American exporters or American companies operating in China" if China were to issue countermeasures in response to the USTR's List 1 tariffs.

39.     On June 18, 2018, despite the fact that the List 1 and List 2 tariffs had not yet taken effect, the President again directed the USTR to consider whether the United States should impose additional duties on Chinese products with an estimated trade value totaling $200 billion. In a statement accompanying this directive, President Trump explicitly cited as a motivating factor in his decision China's "unacceptable" threatened retaliatory "tariffs on $50 billion worth of United States exports," which the President reasoned was a reflection of China's "determination to keep the United States at a permanent and unfair disadvantage." THE WHITE

HOUSE, *Statement from the President Regarding Trade with China* (June 18, 2018), *available at* https://www.whitehouse.gov/briefings-statements/statement-president-regarding-trade-china-2/.

40.     The USTR clearly acknowledged the intent behind the President's directive, noting its intention to specifically design a list of products to counter China's threatened retaliatory trade measures, as opposed to the harms identified in the USTR's original Section 301 report. OFFICE OF THE UNITED STATES TRADE REPRESENTATIVE, *USTR Robert Lighthizer Statement on the President's Additional China Trade Action* (June 18, 2018), *available at* https://ustr.gov/about-us/policy-offices/press-office/press- releases/2018/june/ustr-robert-lighthizer-statement-0 (distinguishing the "proportionate" nature of Lists 1 and 2 implemented in response to the Chinese actions identified in the Section 301 investigation, from the third round of duties responding to "unjustified tariffs" that the Chinese government would use to target "U.S. workers, farmers, ranchers, and businesses").

41.     China retaliated by imposing 25% *ad valorem* tariffs on $50 billion in U.S. goods in response to the USTR's List 1 and List 2. China's retaliatory tariffs were implemented in two stages covering $34 billion and $16 billion in product value, respectively. Each stage took effect on the same day as the List 1 and List 2 tariffs in the United States, *i.e.* July 6, 2018 for List 1 and August 23, 2018 for List 2.

42.     Shortly after China implemented the first round of retaliatory tariffs on U.S imports in response to List 1,the USTR proposed a third "modification" of its "action in this investigation by maintaining the original $34 billion action and the proposed $16 billion action, and by taking a further, supplemental action" via "an additional 10 percent *ad valorem* duty on [a list of] products [from] China with an annual trade value of approximately $200 billion," referred to as "List 3." *Request for Comments Concerning Proposed Modification of Action Pursuant to*

*Section 301: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation*, 83 Fed. Reg. 33,608, 33,608 (July 17, 2018). The USTR claimed this action was made pursuant to Section 307(a)(1)(C) of the Trade Act, under which the USTR "may modify or terminate any action, subject to the specific direction, if any, of the President with respect to such action, . . . if . . . such action is being taken under [Section 301(b)] of this title and is no longer appropriate." *Id*. at 33,609 (citing 19 U.S.C. § 2417(a)(1)(c)). The USTR's initial deadlines related to List 3 were August 17, 2018 for the submission of public comments; August 20-23, 2018 for a public hearing; and August 30, 2018 for rebuttal comments. *Id*. at 33,608.

43.     The USTR reiterated in this notice that the List 3 tariffs were being implemented in response to China's "retaliatory duties" on U.S. exports and its "its refusal to change its acts, policies, and practices". *Id*. at 33,609. As justification for its "appropriate" action, the USTR specifically noted "the level of China's announced retaliatory action ($50 billion) and the level of Chinese goods imported into the United States ($505 billion in 2017)," thus explicitly tying the proposed List 3 tariffs to the Chinese retaliatory duties on U.S. imports. *Id.* ("China's retaliatory action covers a substantial percentage of U.S. goods exported to China . . . . [so,] ($130 billion in 2017). I{i}n order to enhance effectiveness, the level of the U.S. supplemental action must cover a substantial percentage of Chinese imports."). In announcing the proposed tariffs on List 3 products, the USTR did not identify burdens, restrictions, or other harmful effects resulting from the intellectual property violations targeted in its investigation, but rather highlighted China's retaliatory trade actions in response to the USTR's tariffs on List 1. *See id.*

44.     Press releases from the USTR further confirm the administration's motivation behind the announcement of List 3 as China's retaliatory duties. Ambassador Lighthizer specifically stated that the proposed action came "[a]s a result of China's retaliation and failure

to change its practices." OFFICE OF THE UNITED STATES TRADE REPRESENTATIVE, *Statement by U.S. Trade Representative Robert Lighthizer on Section 301 Action* (July 10, 2018), *available at* https://ustr.gov/about-us/policy-offices/press-office/press-releases/2018/july/statement-us-trade-representative.

45.     That same day, the President, criticizing "Massive Trade Surpluses" as "unfair" in a series of social media posts, similarly noted that the United States' trade imbalance with China supported the decision to announce additional Section 301 tariffs on Chinese imports. @realDonaldTrump, TWITTER (July 10, 2018, 9:17 PM EDT), https://twitter.com/realDonaldTrump/status/1005982266496094209. Over the following weeks, President Trump continued to express frustration at China's purported currency manipulation, harmful monetary policies, as well as the retaliatory tariffs he believed to be exacerbating the trade imbalance between China and the United States. *See, e.g.*, @realDonaldTrump, TWITTER (July 20, 2018, 8:43 AM EDT), https://twitter.com/realDonaldTrump/status/1020287981020729344; @realDonaldTrump, TWITTER (July 20, 2018, 8:51 AM EDT), https://twitter.com/realDonald Trump/status/1020290163933630464; @realDonaldTrump, TWITTER (July 25, 2018, 7:20 AM EDT), https://twitter.com/realDonaldTrump/status/1022079127799701504; @realDonaldTrump, TWITTER (July 25, 2018, 7:01 AM EDT), https://twitter.com/realDonaldTrump/status/1022074 252999225344.

46.     Following the President's social media posts, official press releases from the USTR confirmed that, in response to China's retaliatory duties, the USTR would recommend an increases in the proposed List 3 tariffs from 10% to 25% *ad valorem*. Again, rather than addressing the Chinese "acts, policies, and practices" subject to the USTR's investigation

conducted pursuant to Section 301 of the Trade Act, Ambassador Lighthizer instead emphasized China's "regretab[le]" and "illega[l]" "retaliat[ion] against U.S. workers, farmers, ranchers and businesses" as justification for this change. OFFICE OF THE UNITED STATES TRADE REPRESENTATIVE, *Statement by U.S. Trade Representative Robert Lighthizer on Section 301 Action* (Aug. 1, 2018), *available at* https://ustr.gov/about-us/policy-offices/press-office/press-releases/2018/august/statement-us-trade-representative.

47.     Shortly after, under President Trump's direction, the USTR formally proposed "raising the level of the additional duty in the proposed supplemental action[, *i.e.* List 3,] from 10 percent to 25 percent." *Extension of Public Comment Period Concerning Proposed Modification of Action Pursuant to Section 301: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation*, 83 Fed. Reg. 38,760, 38,760 (Aug. 7, 2018). The USTR also revised the dates for the public hearing to span a period of six days ending on August 27, 2018. *See id.*; *see also* OFFICE OF THE UNITED STATES TRADE REPRESENTATIVE, *Public Hearings on Proposed Section 301 Tariff List* (Aug. 17, 2018) (modifying hearing schedule), *available at* https://ustr.gov/about-us/policy-offices/press-office/press-releases/2018/august/public-hearings-proposed-section-301.

48.     In this same notice, the USTR also revised the deadline for submission of *both* initial public comments and rebuttal comments in response to the proposed action to September 6, 2018, less than a month after the announcement. 83 Fed. Reg. at 38,761. This change prevented both the USTR and the public from fully and comprehensively considering initial comments at the hearing, and did not allow adequate time for interested parties to review and respond to initial comments filed by other parties. The USTR also limited participation at the public hearing to five minutes per witness. Docket No. USTR-2018-0026,

https://beta.regulations.gov/document/USTR-2018-0026-0001. Despite the condensed timeline, over 6,000 comments were submitted by the public in response to the proposed tariffs, and approximately 350 witnesses testified at the six-day hearing. *Id.*

49.    Only eleven days after the more than 6,000 public comments had been received, President Trump announced that he had directed the USTR "to proceed with placing additional tariffs on roughly $200 billion of imports from China." THE WHITE HOUSE, *Statement from the President* (Sep. 17, 2018) https://www.whitehouse.gov/briefings-statements/statement-from-the-president-4/. Once again, the President emphasized that his decision was motivated by China's response to the implementation of the List 1 and List 2 duties, and vowed to proceed with tariffs on an *additional $267 billion tariff action* "if China takes retaliatory action against our farmers or other industries." *Id.*

50.    Following President Trump's announcement, the USTR published the final List 3 products to be subject to additional tariffs. 83 Fed. Reg. at 47,974. The USTR initially imposed a 10% *ad valorem* tariff that was set to automatically increase to 25% *ad valorem* on January 1, 2019. *Id.* The implementation date for these tariffs was September 24, 2018. *Id.* The USTR's announcement did not include an analysis of or response to the testimony provided by approximately 350 witnesses during the hearing, nor the over 6,000 public comments received by interested parties largely objecting to its proposal. *Id.*

51.    In its announcement, the USTR cited Section 307(a)(1)(B) of the Trade Act for the first time as a legal basis for its action. Section 307(a)(1)(B) of the Trade Act provides that the USTR "may modify or terminate any action, subject to the specific direction . . . of the President . . . taken under Section 301 if . . . the burden or restriction on United States commerce of the denial of rights, or of the acts, policies, or practices, that are the subject of such action has

increased or decreased." *Id.* (brackets omitted). The USTR noted that the relevant burden

"continues to increase, including following the one-year investigation period," clarifying that

"China's unfair acts, policies, and practices include not just its specific technology transfer and

IP polices referenced in the notice of initiation in the investigation, *but also China's subsequent*

*defensive actions taken to maintain those policies*." *Id.* (emphasis added). The USTR also argued

that China's response to the $50 billion tariff action "has shown that the current action no longer

is appropriate" because "China openly has responded to the current action by choosing to cause

further harm to the U.S. economy, by increasing duties on U.S. exports to China." *Id.* at 47,975.

52.     Over the following months, the United States and China underwent several rounds

of trade negotiations, attempting to find a mutually beneficial solution to the escalating "trade

war." Due to ongoing progress in the U.S. negotiations with China, the Trump Administration

announced both in December 2018 and in February 2019 that it would postpone the automatic

increase in the List 3 duty rate from 10% to 25%. *Notice of Modification of Section 301 Action:*

*China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and*

*Innovation*, 83 Fed. Reg. 65,198 (Dec. 19, 2018); *Notice of Modification of Section 301 Action:*

*China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and*

*Innovation*, 84 Fed. Reg. 7,966 (Mar. 5, 2019).

53.     Ultimately, however, the trade negotiations were not successful and in May 2019,

the USTR announced its intent to raise the rate of the duty on List 3 products from 10% to 25%

*ad valorem*. Depending on the date of export, the 25% duties on List 3 products took effect either

May 10, 2019 or June 1, 2019. *See Notice of Modification of Section 301 Action: China's Acts,*

*Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation*,

84 Fed. Reg. 20,459 (May 9, 2019) ("*List 3 Rate Increase Notice*"); *see also Implementing*

*Modification to Section 301 Action: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation*, 84 Fed. Reg. 21,892 (May 15, 2019). The notice announcing the increase cited China's decision to "retreat from specific commitments agreed to in earlier rounds" of negotiations as the rationale for the increased rate. *List 3 Rate Increase Notice*, 84 Fed. Reg. at 20,459. Unlike in previous rounds, the USTR did not seek public comment, but rather simply announced that the increase would occur without an opportunity for public stakeholders to weigh in. *Id.*

54.    Recognizing that the scope of the List 3 tariffs could cause significant harm to U.S. companies and consumers, as well as the U.S. economy, the USTR  announced a process by which interested parties could seek exclusions from the duties on a product-specific basis in June 2019..*Procedures for Requests to Exclude Particular Products From the September 2018 Action Pursuant to Section 301: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation*, 84 Fed. Reg. 29,576 (June 24, 2019). The USTR has granted some exclusion requests, retroactive to September 24, 2018 and effective until August 7, 2020, while denying the remainder.

55.    As of the date of this Complaint, the List 3 tariffs remain in effect at a rate of 25%, with the exception of the limited number of products that remain excluded until December 31, 2020 via the extension of granted exclusions. *See, e.g.*, *Notice of Product Exclusion Extensions: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation*, 85 Fed. Reg. 48,600 (Aug. 11, 2020).

**B.    <u>List 4</u>**

56.     On May 17, 2019, a mere eight days after publishing its decision to increase the duty rates on products covered by List 3, the USTR published a yet another proposed list of

products to be subject to additional duties, known as "List 4." The USTR proposed List 4 duties of 25% *ad valorem* on an additional $300 billion worth of products. *Request for Comments Concerning Proposed Modification of Action Pursuant to Section 301: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation*, 84 Fed. Reg. 22,564, 22,564 (May 17, 2019). As with the List 3 tariffs, the USTR explained that its decision was motivated by China's "announce[ment of] further retaliatory action against U.S. commerce," as well as its "retreat[] from specific commitments made in previous [negotiating] rounds." *Id.*

57.     As with the previous rounds, the USTR invited the public to submit comments on the proposed product list and to participate in a public hearing. *Id.* Nearly 3,000 comments were submitted to the USTR on List 4 products. Docket No. USTR-2019-0004, https://beta.regulations.gov/document/USTR-2019-0004-0001. However, similar to List 3, the timeline for participation at the public hearing did not afford  opportunity for meaningful input by interested parties. The USTR required all witnesses to submit draft testimony to the USTR by June 10, 2019,  seven days before the deadline for fully developed written comments, and again limited testimony to only five minutes per witness.  *Id.*

58.     On August 1, 2019,  President Trump announced that a "small additional Tariff of 10%" would take effect on List 4 products on September 1, 2019 at a rate of 10% *ad valorem* as a result of China's failure to follow through on agricultural purchases and to reduce fentanyl exports coming into the United States. @realDonaldTrump, Twitter (Aug. 1, 2019, 1:26 PM EDT), https://twitter.com/real DonaldTrump/status/1156979446877962243.

59.     On August 20, 2019, the USTR issued a final notice implementing tariffs on List 4 in two phases, referred to as List 4A and List 4B. *Notice of Modification of Section 301 Action:*

*China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation*, 84 Fed. Reg. 43,304 (Aug. 20, 2019). List 4A, effective September 1, 2019, would impose a 10% a*d valorem* duty on products with a trade value of approximately $120 billion, while List 4B would impose a 10% *ad valorem* duty on the remaining goods as of December 15, 2019. *Id*. at 43,304 - 05. Once again, the USTR did not address any of the nearly 3,000 public comments submitted during the notice and comment process, nor did it respond to any of the witness testimony provided at the public hearing, other than broadly claiming that the determination took "account of the public comments and the testimony." *Id*.

60.     As with List 3, the USTR again cited Section 307(a)(1)(B) and (C) of the Trade Act as legal support for its action, highlighting its authority to modify prior action taken pursuant to Section 301 of the Trade Act if: (1) "[t]he burden or restriction on United States commerce" imposed by the investigated foreign country practice "has increased or decreased," or (2) "the action . . . is no longer appropriate." *Id.* at 43,304. But rather than find any increased burden on U.S. commerce from the "acts, policies, and practices" targeted by the USTR's investigation, the USTR simply pointed to "China's subsequent defensive actions taken to maintain those unfair acts, policies, and practices as determined in that investigation," most notably the retaliatory tariffs on U.S. imports, retreating from commitments during negotiations, and devaluing its currency. *Id.*

61.     On August 30, 2019, just ten days after publication of the notice implementing the List 4 tariffs, the USTR made a second announcement increasing the tariff rate on List 4A and List 4B products from 10% to 15%. *Notice of Modification of Section 301 Action: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation*, 84 Fed. Reg. 45,821 (Aug. 30, 2019). The USTR explained that this increase was due to China

"announcing further tariffs on U.S. goods" as retaliation to the USTR's proposed List 4A and 4B tariffs. *Id.* at 45,822. The USTR again cited China's retreat from its negotiation commitments and devaluation of its currency as additional grounds for the increased rates pursuant to this action. *Id.*

62.     Following the successful negotiation of a "Phase One" trade deal with China, the USTR announced  that it would "suspend indefinitely the imposition of additional duties of 15 percent on products of China covered by" List 4B on December 18, 2019. *Notice of Modification of Section 301 Action: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation*, 84 Fed. Reg. 69,447, 69,447 (Dec. 18, 2019). The USTR also stated its intent to reduce the tariff rate applicable to products covered by List 4A. *Id.* This revision ultimately took effect on February 14, 2020, when the USTR decreased the applicable duty rate for List 4A from 15% to 7.5%. *Notice of Modification of Section 301 Action: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation*, 85 Fed. Reg. 3,741 (Jan. 22, 2020).

63.     In the following months, the limited trade deal the United States and China had negotiated in late 2019 was implemented. OFFICE OF THE UNITED STATES TRADE REPRESENTATIVE, *United States and China Reach Phase One Trade Agreement* (Dec. 13, 2019), https://ustr.gov/about-us/policy-offices/press-office/press-releases/2019/december/united-states-and-china-reach. During that time, Defendants did not impose additional duties on products covered by List 4B, most likely because China had agreed to unrelated concessions under the "Phase One" deal.

64.     As of the date of this Complaint, the duties imposed on products covered by List 4A remain in effect at a rate of 7.5%. Although the proposed duties on products covered by List

4B remain suspended, President Trump continues to threaten their implementation if China does

not meet its obligations under the agreement. *See, e.g.*, @realDonaldTrump, TWITTER (June 22,

2020, 10:22 PM EDT), https://twitter.com/realDonaldTrump/status/1275252814206447618

("The China Trade Deal is fully intact. Hopefully they will continue to live up to the terms of the

Agreement!").

## STATEMENT OF CLAIMS

## COUNT ONE

## (DECLARATORY JUDGMENT—VIOLATION OF THE TRADE ACT OF 1974)

65.     Paragraphs 1 through 64 are incorporated by reference.

66.     The Declaratory Judgment Act authorizes any court of the United States to

"declare the rights and other legal relations of any interested party seeking such declaration,

whether or not further relief is or could be sought." 28 U.S.C. § 2201(a).

67.     The Trade Act of 1974 does not authorize the actions taken by Defendants that

resulted in the List 3 and/or List 4 tariffs.

68.     Pursuant to Section 301 of the Trade Act, the USTR may impose tariffs when it

determines that "an act, policy, or practice of a foreign country is unreasonable or discriminatory

and burdens or restricts United States commerce, and action by the United States is appropriate."

19 U.S.C. § 2411(b). The USTR failed to predicate its action giving rise to the List 3 and/or List

4 tariffs on any such determination.

69.     If the USTR concludes upon investigation that a foreign country maintains an

unfair trade practice, Section 304 of the Trade Act requires the USTR to "determine what action,

if any," to take within "12 months after the date on which the investigation is initiated." 19

U.S.C. § 2414(a)(1)(B), (2)(B). The USTR's action giving rise to List 3 occurred in September

2018, over a year after the USTR initiated the underlying Section 301 investigation on August 18, 2017. The subsequent action giving rise to List 4 occurred in August 2019, more than two years after the USTR initiated the Section 301 investigation.

70.     Section 307 of the Trade Act authorizes the USTR to "modify or terminate" an action taken pursuant to Section 301(b) of the Trade Act when the burden imposed on U.S. commerce from the foreign country's investigated unfair acts, policies, or practices increases or decreases. 19 U.S.C. § 2417(a)(1)(B). It does not permit Defendants to increase tariffs for reasons unrelated to the acts, policies, or practices that the USTR investigated pursuant to Section 301 of the Trade Act. Congress did not authorize the USTR to escalate its focused investigatory findings into an open-ended trade war.

71.     Section 307 of the Trade Act also authorizes the USTR to "modify or terminate" an action taken pursuant to Section 301(b) of the Trade Act if the initial action taken by the USTR "is no longer appropriate." 19 U.S.C. § 2417(a)(1)(C). Section 307 of the Trade Act does not authorize Defendants to *increase* tariff actions that are no longer "appropriate," but rather only to delay, taper, or terminate such actions.

72.     Plaintiffs are therefore entitled to a declaratory judgment that Defendants' actions giving rise to List 3 and/or List 4 are *ultra vires* and contrary to law.

## COUNT TWO

## (VIOLATION OF THE ADMINISTRATIVE PROCEDURE ACT)

73.     Paragraphs 1 through 72 are incorporated by reference.

74.     The APA authorizes the Court to hold unlawful and set aside agency action that is: "(A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (B) contrary to constitutional right, power, privilege, or immunity; (C) in excess of statutory

jurisdiction, authority, or limitations, or short of statutory right; (D) without observance of procedure required by law; [or] (E) unsupported by substantial evidence." 5 U.S.C. § 706(2).

75.     Defendants exceeded their authority under the Trade Act in promulgating List 3 and/or List 4 and therefore acted "not in accordance with the law" and "in excess of statutory authority" for the reasons set forth in Count One.

76.     Defendants failed to offer any evidence for any asserted "increased burden" from China's intellectual property policies and practices that were the subject of the USTR's Section 301 investigation.

**77.**     Defendants also promulgated List 3 and/or List 4 in an arbitrary and capricious manner because they did not provide a sufficient opportunity for comment, failed to meaningfully consider relevant factors when making their decisions, and failed to adequately explain their rationale. The unlawful imposition of tariffs on imports covered by List 3 and/or List 4 was adopted in violation of the APA and must be set aside under 5 U.S.C. § 706(2).

## PRAYER FOR RELIEF

Wherefore, Plaintiffs respectfully request that this Court

(1)     declare that Defendants' actions resulting in tariffs on products covered by List 3 and/or List 4 are unauthorized by, and contrary to, the Trade Act;

(2)     declare that Defendants arbitrarily and unlawfully promulgated List 3 and/or List 4 in violation of the APA;

(3)     vacate the List 3 and/or List 4 rulemaking;

(4)     order Defendants to refund, with interest, any duties paid by Plaintiffs pursuant to List 3 and/or List 4;

(5)     permanently enjoin Defendants from applying List 3 and/or List 4 against Plaintiffs and collecting any duties from Plaintiffs pursuant to List 3 and/or List 4;

(6)     award Plaintiffs their costs and reasonable attorney fees; and

(7)     grant such other and further relief as may be just and proper.

Respectfully submitted,

**/s/ Nancy A. Noonan**
Nancy A. Noonan
Friederike S. Görgens
Leah N. Scarpelli
Russell A. Semmel
Jessica R. DiPietro
Natan P.L. Tubman

Dated: November 13, 2020

ARENT FOX LLP
1717 K Street, NW
Washington, D.C. 20006
*Counsel to Church & Dwight Co., Inc. and Water Pik, Inc.*